"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SA CR 02-124 AHS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR NEW TRIAL AND |
| RENE SANCHEZ, | ) | REQUEST FOR EVIDENTIARY |
| | ) | HEARING |
| Defendant. | ) | |
| _____ | ) | |

## I.

### INTRODUCTION

On August 19, 2005, defendant Rene Sanchez ("Sanchez") filed a Motion for New Trial and Discovery Pursuant to Fed. R. Crim. P. 33 and <u>Brady v. Maryland</u>. This Court applied the five-part test outlined in <u>United States v. Kulczyk</u>, 931 F.2d 542 (9th Cir. 1991), and denied the motion. Defendant appealed. On February 5, 2008, the Court of Appeals for the Ninth Circuit vacated the order denying the new trial motion and remanded it for the Court to "reconsider the motion for a new trial, applying the correct standard, which governs a motion for new trial based on the alleged use of perjury by the government in its

prosecution." On August 18, 2008, Sanchez moved for a new trial pursuant to the remand. On September 18, 2008, the government filed opposition. On September 29, 2008, Sanchez filed a reply. On November 3, 2008, the Court heard Sanchez's Motion for New Trial, and thereafter the Court took the matter under advisement. After considering the parties' filings, the trial proceedings in this case, the Ninth Circuit's instructions, and the arguments of counsel at the hearing, the Court hereby denies Sanchez's Motion for New Trial.

## II.

### PARTIES CONTENTIONS AND FACTS

The parties and the Court are familiar with the facts and contentions as set forth in the briefs.

## III.

### DISCUSSION

**A.    Legal Standard**

The Court should grant the motion for new trial and set aside the conviction "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Endicott, 869 F.2d 452, 455 (9th Cir. 1989) (citing United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. If the evidence is sufficient to undermine confidence in the outcome, then the evidence is considered material. Id. at 454-55.

If the new evidence concerns the credibility of a witness, "when the reliability of a given witness may well be

1  determinative of guilt or innocence, nondisclosure of evidence
2  affecting credibility warrants a new trial irrespective of the good
3  faith or bad faith of the prosecution." Endicott, 869 F.2d at 456;
4  see also Carriger v. Stewart, 132 F.3d 463, 481-82 (9th Cir. 1997)
5  (holding that evidence is material if it rebuts formerly unrebutted
6  testimony of a critical government witness whose credibility is
7  essential to the case).  In determining materiality, "it is
8  important to analyze the significance of the [witness's] testimony
9  to the prosecution's case." Benn v. Lambert, 283 F.3d 1040, 1059
10 (9th Cir. 2002).  "[N]ewly discovered evidence to impeach a
11 government witness does not warrant a new trial when the evidence
12 would not have affected the jury's assessment of the witness's
13 credibility and when the witness was subjected to vigorous cross-
14 examination." Endicott, 869 F.2d at 456 (finding new trial not
15 warranted where there was substantial other evidence, including a
16 corroborating tape recording).

**B.      Analysis**

For the purposes of this ruling, the witness statements from Eric A. Silva and Patrick Avolas and the declaration from Ramon Juan Cano, as proffered, are accepted as true.

Sanchez argues that the newly-proffered evidence is material to corroborate his version of events and that Informant Fierro entrapped him into selling four pounds of methamphetamine. A valid entrapment defense requires: (1) government inducement of the crime; and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. Matthews v. United States, 485 U.S. 58, 63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988). Moreover, "if the defendant is found to be predisposed to commit a

3

crime, an entrapment defense is unavailable regardless of the inducement." United States v. McClelland, 72 F.3d 717, 722 (9th Cir. 1995).

As discussed below, the impeachment value of the newly-discovered evidence and Fierro's importance as a witness only addresses the inducement prong of Sanchez's entrapment defense. The evidence demonstrating predisposition remains undisturbed.

### 1. The New Evidence Affects Fierro's Credibility Related to Inducement

If the newly-discovered evidence still requires several additional inferences to undermine an earlier conclusion, then it has little probative value. United States v. Ross, 372 F.3d 1097, 1108-09 (9th Cir. 2003) (affirming denial of motion for new trial where new evidence, procurement of witness's green card, only generally implied the government may have been willing to induce defendant).

The new evidence consists of a declaration from Cano, multiple memoranda of investigator's interviews with Silva, and a memorandum of interview with Avolas. Cano's declaration concludes by stating, "I know [] Fierro was doing/using methamphetamine and selling methamphetamine in November and December 2001." This information would contradict Fierro's statement at trial that he only used drugs one time during his California Bureau of Narcotics employment and that he engaged in no other illegal activity during that time.

The interviews with Silva offer the strongest evidence against Fierro's testimony. Silva indicated that he and Fierro used methamphetamine together and sold drugs to each other. Silva

also stated that "[a]round January and through about March 2002, Fierro constantly pressured Silva to try and get 10 pounds of meth for Fierro to buy. [Fierro] was willing to pay $10,000 per pound." Silva also, with some inconsistencies, supported Sanchez's version of the first meeting with Fierro in that Fierro sold them drugs on that occasion and did drugs with them.[1]  Accepting the interview statements as credible, the statements demonstrate:  (1) Fierro sold drugs, which he did not admit on cross-examination; (2) Fierro used drugs on more occasions than his testimony reflected; (3) Fierro sold drugs to Sanchez when they first met, contrary to Fierro's testimony; and (4) that there is additional support for Sanchez's claim that Fierro asked Sanchez to sell him a large amount of drugs, whereas Fierro claimed that Sanchez initiated the large-volume sale.

Avolas's evidence, in the form of an investigator's interview memoranda, indicated that "Fierro smoked meth with them in Jamie's apartment," about three years before September 2005. Accepted as proffered, it could indicate that Fierro used drugs one other time than when he admitted during cross-examination.[2]

Cumulatively, the newly-discovered evidence demonstrates that Fierro did drugs more times than he admitted, that he sold drugs, which he did not admit to, and may have asked Sanchez to

---

[1] Defendant argues that Silva's arrest with someone in the car who likely was Fierro supports the conclusion that Fierro was using drugs.  The arrest report, however, makes no statements that the driver (Fierro) used the drug pipe found in the car. Thus, defendant's argument on this point is unsupported.

[2] It could also be the same occasion on which Fierro admitted using drugs because there is nothing in the record indicating that it was not.

5

sell him a large amount of drugs. This evidence further impeaches Fierro's testimony in addition to his impeachment at trial. Under the most favorable interpretation to Sanchez, it may also support the conclusion that Fierro induced Sanchez to sell him the drugs.

The newly-discovered evidence does not, however, support Sanchez's claim that Fierro induced him to do the large drug deal as a way to pay off the $600 debt for fear of personal harm. It does not address whether Sanchez was predisposed, an essential entrapment element.

### 2. **Fierro's Testimony Was Important to Show that Sanchez Was Not Induced**

Here, Fierro's testimony was most important in its relevance to the period of time beginning when he met Sanchez and ending the day of the drug buy-bust. On the day of the transaction there were numerous recordings and witnesses, but the earlier period of time relates to when Sanchez claimed Fierro entrapped him. The prosecutor highlighted Fierro's testimony's relevance at closing, stating that Fierro did not use drugs with or sell drugs to Sanchez and did not induce him into the drug deal. Thus, Fierro's testimony was important to the government's case because it contradicted Sanchez's testimony regarding inducement.

### 3. **The Government's Evidence Absent Fierro's Testimony**

The Court should determine whether there is "sufficient evidence apart from [the impeached testimony] to carry the case to the jury." Willhoite v. Vasquez, 921 F.2d 247, 249 (9th Cir. 1990); United States v. Vergi, 51 F.3d 876, 879 (9th Cir. 1995)

//
//

(corroborating evidence can be circumstantial).[3]  <u>Willhoite</u> found adequate supporting evidence, without the government's witness's testimony, to connect the defendant to the murders where:  (1) testimony of defendant's ex-girlfriend connected him to the knife used to stab the victim; (2) other witnesses testified that another defendant referenced the killing; and (3) a third witness's testimony that linked both defendants to incriminating statements made regarding the victim's death.  <u>Willhoite</u>, 921 F.2d at 249. Thus, a new trial is not warranted where there is sufficient evidence of record, discounting the newly-impeached witness's testimony, to demonstrate the absence of a reasonable probability that the result of the proceeding would have been different.

### a.   The Government's Evidence Regarding Inducement

The facts that support the government's showing that Sanchez was not induced are:  (1) phone records indicating Sanchez's numerous calls to Fierro with few calls back by Fierro; (2) phone records that also show Sanchez's occasional calls to Isaac Calderon immediately after talking to Fierro; and (3) that Sanchez was to receive a typical payment for the deal.

While circumstantial evidence can support a claim, under <u>Vergi</u>, the government's evidence here does not necessarily to contradict Sanchez's claims that he was not induced.  For example,

---

[3] <u>Vergi</u> affirmed a conspiracy conviction to distribute where an agreement could reasonably be inferred by the trier of fact. <u>Vergi</u>, 51 F.3d at 879.  <u>Vergi</u> noted the supporting evidence was: (1) that the two defendants traveled on the same day to the same place; (2) that they shared a room there together; (3) that non-moving defendant's thumb print was found on the bag of cocaine; and (4) they drove together to meet the buyer/informant and were present during the drug sale.  <u>Id.</u>

if, as Sanchez claims, he is a perpetual drug addict and Fierro was selling him drugs, then another reasonable explanation for the phone calls is that Sanchez was calling Fierro because he desperately wanted drugs.  Also, the calls back to Calderon could be explained under Sanchez's theory of the case that, out of concern for his safety, Sanchez quickly called Calderon after talking to Fierro to ensure he made the correct and necessary arrangements for the big drug deal.  The customary amount for the deal does not cut one way or the other because even though the expected profit was not unusual, it was still a lot of money, and it does not definitively indicate a lack of inducement.  Thus, Fierro's testimony on this point was material.

### (b)  The Government's Evidence Regarding Predisposition

Regarding an entrapment defense, a defendant's tape-recorded enthusiasm for a drug deal demonstrates predisposition. Ross, 372 F.2d at 1109; see also Reid v. United States, 334 F.2d 915, 917 (9th Cir. 1964) (evidence that defendant previously was charged for selling heroin was relevant to oppose his defense of entrapment).

Here, the government's evidence, independent of Fierro's testimony, that Sanchez was predisposed to engage in the large drug deal includes:  (1) recordings from the day of the transaction indicating that Sanchez enthusiastically participated; (2) Sanchez's use and understanding of common drug lingo, including his statement that he has "been there, done that; and I know, you know, the procedures and everything homey.  I know how to do it;" and (3) Sanchez's two prior drug convictions for possession with intent to

8

1  sell.

2       This evidence demonstrates that Sanchez was predisposed
3  to commit the crime regardless of any statements from Fierro.
4  Here, like in <u>Endicott</u>, there is a recording indicating the same
5  fact as testimony, which <u>Endicott</u> found as sufficient grounds to
6  deny the new trial motion.  Further, like <u>Ross</u>, Sanchez's
7  enthusiasm demonstrates his predisposition to engage in the drug
8  deal.  Additionally, as in <u>Reid</u>, prior convictions for the same
9  activity underlying the current charges indicate that the defendant
10 was predisposed.  Like in <u>Willhoite</u>, the evidence, absent the
11 government's witness's testimony, sufficiently supports the
12 conclusion that there is not a reasonable probability that the
13 result would have been different.

14      Thus, Fierro's testimony that relates to Sanchez's
15 predisposition is not material, if it existed, because there is
16 substantial evidence of record to support that conclusion.  In sum,
17 the newly-discovered evidence is material only to Sanchez's claim
18 of inducement.  The newly-discovered evidence does not demonstrate
19 a reasonable probability that Sanchez was not predisposed, and thus
20 the result of the proceeding would not have been different.
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**VI.**

**CONCLUSION**

For the foregoing reasons, the Court denies Sanchez's Motion for New Trial.  The Court also denies Sanchez's request for an evidentiary hearing.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.

DATED:   January 6, 2009.

*ALICEMARIE H. STOTLER*
_____
ALICEMARIE H. STOTLER
UNITED STATES DISTRICT JUDGE